Filed 9/11/25 Conservatorship of M.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| Conservatorship of the Person and Estate of M.G. | |
| SAN JOAQUIN COUNTY PUBLIC HEALTH GUARDIAN, as Conservator, etc., <br><br> Petitioner and Respondent, <br><br> v. <br><br> M.G., <br><br> Objector and Appellant. | C101955 <br><br> (Super. Ct. No. STK-MH-LPSC-2023-0000072) |

M.G. appeals from an order reappointing a conservator of her person and estate under the Lanterman-Petris-Short Act (Welf. & Inst. Code,[1] § 5000 et seq.) (LPS Act). She contends there is insufficient evidence to support the trial court's finding that she was " 'gravely disabled,' " defined in the statute as a person who, due to a mental health disorder, is "unable to provide for their basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).) We affirm the trial court's order.

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

1

FACTUAL AND PROCEDURAL BACKGROUND

In April 2023, the trial court found M.G. to be gravely disabled and appointed a conservator of her person and estate.

In March 2024, the public conservator filed a petition for reappointment. M.G. opposed the petition. M.G. waived her right to a jury trial, and the matter proceeded to a court trial in August 2024.

At trial, petitioner presented two witnesses: Alexa Ponte and Dr. Timothy Miller. M.G. did not call any witnesses.

Ponte testified that she is a mental health specialist employed by San Joaquin County Behavioral Health. Ponte began working with M.G. in April 2024. Ponte sees M.G. twice a month. M.G.'s current placement is in an enhanced board and care facility, which is a structured environment that is not locked. Previously, M.G. lived in a locked facility.

Ponte recommended the current placement because M.G. "struggles with having lack of insight." On one occasion, M.G. brought Ponte a bag and said, "[T]his is my bank . . . ." When M.G. opened the bag, Ponte saw "tin foil and toilet paper, and [M.G.] was trying to calculate how much money she had in the bag." Ponte concluded M.G. "has a level of delusions that she's still dealing with, such as believing she has all this money" that was "tinfoil and toilet paper." M.G. "also believes that she was pregnant because her notebook had a bump in it."

Ponte expressed concern about how M.G. would manage if she were not in a structured environment, given the level of delusions with which she struggles. In a structured environment, the staff helps residents with daily activities, such as prompting them to take their medication. Ponte also encourages M.G. to take her medications. M.G. was compliant with her medications. When Ponte asked M.G. if she intended to continue medication if the conservatorship were terminated, M.G. said, " 'I would if I had to.' " When asked how she would obtain medications, M.G. said she " 'would just go to

2

[a pharmacy], and they would be there.' " M.G. does not understand that there is a process to getting her medications.

When Ponte asked M.G. about her life plan if the conservatorship were terminated, M.G. said, " 'she would like to live in a motel room and prostitute . . . .' " M.G. also said she would like to get a job at a fast food restaurant, but she did not understand the steps required to get a job. M.G. has also said she wanted to live in a homeless shelter or with a friend in Modesto, although no friends visit her at the board and care facility. Ponte was not aware of any friends or family members who interacted with M.G.

On cross-examination, Ponte testified that when she had met with M.G., she was properly dressed and had fair hygiene.

Dr. Miller is a licensed psychologist with a doctoral degree in psychology. Dr. Miller testified as an expert in diagnosing mental illness, specifically with regard to grave disability.

Dr. Miller evaluated M.G. and determined that she is gravely disabled.

M.G. suffers from the mental illness, schizophrenia. M.G. has auditory hallucinations—she told Dr. Miller she hears voices. M.G. also has delusional beliefs. As an example of M.G.'s delusions, she had a piece of paper with the address and phone number of her board and care facility and a list of her medications, which she was supposed to keep with her for safety. M.G. told Dr. Miller she could take the paper to "a bank and get a lot of money." M.G. also said she was an important person in the federal government and "could make things go her way." M.G. then talked about "spy agencies and having a lot of money somewhere."

M.G. takes an antidepressant and the medication Clorazil to reduce or eliminate hallucinations and delusions, but she is still displaying some symptoms of schizophrenia. Dr. Miller testified he did not believe M.G. could monitor her medications if the conservatorship were terminated. M.G.'s insight into her mental disorder is poor. M.G.

3

denies she has a mental disorder and does not understand what a mental disorder is. M.G. sometimes argues with staff at the facility about whether she really needs medication, although she does not normally refuse it. M.G. cannot recall her mental health crisis admissions or the problems she has had over the last few years because of her mental disorder. As a result, she has no motivation to avoid future crises.

M.G. told Dr. Miller that her plan if the conservatorship is terminated is to move in with a boyfriend who owns a smoke shop with an attached residence. M.G. only knew this man's first name and did not have his address or phone number. He has not visited her at her current placement, and M.G. does not know when she last saw him. M.G. assured Dr. Miller that this man "would protect her, care for her, be nice and kind to her, and provide her with a place to live and food and any other needs she might have." M.G. said the smoke shop was around the corner, but Dr. Miller could not find any such business nearby.

Dr. Miller opined that "it's not impossible" for M.G. to hold a job if it were "the right job with the right boss," but "the odds are against it." It is unlikely M.G. could obtain a job given her hallucinations and conversations with imaginary people. These symptoms can still occur, even where they are partly controlled by medication. Also, when somebody is impaired by poor insight and judgment, their ability to understand and follow instructions and to recognize and correct mistakes is absent or diminished, making it hard for them to hold a job.

On cross-examination, Dr. Miller testified that one of the places M.G. stated she could stay is with an uncle.

The trial court granted the petition for conservatorship, finding that petitioner had proven beyond a reasonable doubt that M.G. was presently gravely disabled and not able to provide for her food, shelter, and clothing. M.G. filed a timely notice of appeal.

DISCUSSION

M.G. contends there is no substantial evidence supporting the conclusion that she is gravely disabled as a result of a mental disorder. M.G. argues the testimony of Ponte and Dr. Miller "did not adequately address the ability of M.G. to [meet] her basic needs for food, clothing and shelter" and therefore "cannot be considered credible, substantial evidence that at the time of the hearing, M.G. was gravely disabled."

A court may renew a conservatorship under the LPS Act if a person is gravely disabled, meaning the person, as a result of a mental health disorder, cannot provide for their basic personal needs for food, clothing, or shelter. (§§ 5350, 5008 subd. (h)(1)(A); *Conservatorship of K.P.* (2021) 11 Cal.5th 695, 710-711; see also *Conservatorship of S.A.* (2020) 57 Cal.App.5th 48, 54 (*S.A.*); *Conservatorship of A.J.* (2025) 109 Cal.App.5th 728, 732.) " 'The state has the burden to prove beyond a reasonable doubt that the conservatee remains gravely disabled.' " (*Conservatorship of K.P.,* at p. 710; *S.A.*, at p. 54; *Conservatorship of A.J*, at p. 732.) The testimony of one witness is sufficient to support a finding of grave disability. (*Conservatorship of Carol K.* (2010) 188 Cal.App.4th 123, 134.)

"We review the whole record in favor of the judgment below to determine whether there was substantial evidence [the conservatee] was gravely disabled beyond a reasonable doubt. [Citation.] Substantial evidence includes circumstantial evidence and reasonable inferences flowing from it. [Citation.] [¶] Evidence conservatees (1) lack insight about their mental illness, (2) would not take medication without the support of a conservator, and (3) could not provide for themselves without medication is enough to support a court's finding of grave mental illness." (*S.A., supra*, 57 Cal.App.5th at p. 54, citing *Conservatorship of Walker* (1989) 206 Cal.App.3d 1572, 1577; see also *Conservatorship of Guererro* (1999) 69 Cal.App.4th 442, 446-447.)

Here, there is ample evidence supporting the trial court's finding that M.G. is gravely disabled. On appeal, M.G. does not contest that she has a mental disorder.

Rather, she limits her appeal to challenging the sufficiency of the evidence supporting the conclusion that she cannot provide food, clothing, or shelter for herself because of her mental disorder. We find substantial evidence supports the trial court's finding that M.G. is gravely disabled.

To begin with, M.G.'s insight into her mental disorder is poor. M.G. denies she has a mental disorder. Both Ponte and Dr. Miller concluded M.G. would not take medication to control the symptoms of her disorder without the support of the conservator. M.G. requires prompting to take medication and argues with staff at the board and care facility regarding whether she needs medication. While M.G. said she will take medication if she has to upon termination of conservatorship, her plan to obtain it is simply to go to the pharmacy, without any understanding of the process required for a pharmacy to provide medication.

Even with medication, the evidence showed M.G. cannot provide for herself. Although she is currently medication compliant, M.G. showed Ponte a bag containing pieces of toilet paper and tin foil, said it was money, and tried to calculate its value. Similarly, M.G. told Dr. Miller she could take a paper with her medication list and board and care facility address to the bank to "get a lot of money" and also talked about "having a lot money somewhere." Evidence of delusions so severe that M.G. believes she has nonexistent funds supports the inference that M.G. will not have the means to purchase food, buy clothing, or pay rent if the conservatorship is terminated.

M.G.'s post-conservatorship plan to move in with a boyfriend who will take care of her is also delusional. M.G. did not know the last name of this man, his phone number, or address, or when she had last seen him. Dr. Miller could not find the nearby smoke shop that M.G. said this man owned. M.G. also talked about living with a friend in Modesto. However, no friends or family members had visited her at the board and care facility. Other plans M.G. has discussed, i.e., prostitution in a motel room, would be

6

manifestly unsafe.  We conclude that substantial evidence supports the trial court's finding that M.G. was gravely disabled.

DISPOSITION

The order reappointing the conservator is affirmed.


_____\s\_____
Krause, J.

We concur:


_____\s\_____
Renner, Acting P. J.


_____\s\_____
Feinberg, J.